IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHNNY P. APODACA,

    Plaintiff,

vs.                                                      No. CIV 97-692 BB/WWD

KENNETH S. APFEL,[1]
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

    1.  This matter comes before the Court upon plaintiff's Motion to Reverse and Remand for a Rehearing, filed January 22, 1998 [9-1]. The Commissioner denied plaintiff's request for Social Security Disability Insurance and Supplemental Security Income benefits. Plaintiff is 46 years of age and alleges a disability which commenced December 4, 1992, due to arthritis in the hips and shoulders, and pain in the lower back, lower abdomen, right foot and ankle. Mr. Apodaca has a high school education and has worked as a cook and construction laborer.

    2.  After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") denied plaintiff's applications, concluding that Mr. Apodaca is not disabled because he can perform a partial range of sedentary and light work, and that there are a significant number of jobs in the national economy that he can perform. The Appeals Council denied Mr.

---

[1] President Clinton appointed Kenneth S. Apfel Commissioner of Social Security as of August 29, 1997. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Kenneth S. Apfel should be substituted as defendant for Acting Commissioner John J.Callahan, who was the appropriate party at the time of the underlying decision. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Apodaca's request for review of the ALJ's decision, thus the ALJ's decision is the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

3. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). Additionally, the final decision can be reversed if the ALJ failed to apply the correct legal tests. Id.

4. Plaintiff raises the following allegations of error with respect to the ALJ's decision, specifically, that the ALJ: (1) did not consider whether Mr. Apodaca's obesity equals the Listing of Impairments and also did not consider the combination of impairments at the Listings level; (2) failed to consider plaintiff's testimony that he needs to lie down during the day, and the effect of his drowsiness on his ability to work; (3) improperly relied on the absence of a doctor's opinion that Mr. Apodaca is disabled; and (4) relied on the vocational expert's opinion, without testimony regarding the number of jobs available in the regional economy .

5. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486. Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

6. At the first four levels of the evaluation, the claimant must show: (1) that he is not working; (2) that he has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he is unable to perform work done in the past. At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work. Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

7. Plaintiff's complaints began after a motor vehicle accident in December 1992, after which he started seeing a chiropractor for treatments. He initially showed improvement over the next few months. When he saw Donna Deming, M.D. for a consultation at the request of the Social Security Administration in March 1994, he was complaining of pain in his shoulders upon movement. He told Dr. Deming that had a history of osteoarthritis with pain in his hips, shoulders, knees and elbows. Tr. at 91.

8. Dr. Deming reported that plaintiff had full range of motion in all joints tested. He could squat, walk on his toes and heels, although he complained of heel pain with this exercise, and shoulder pain with any movement. Tr. at 91. She viewed plaintiff's obesity to be a "moderate mechanical problem which also adds stress to his joints." Id. Other findings included a "history" of osteoarthritis with accompanying pain in hips, shoulders, knees and elbows and elevated blood pressure. Id.

9. In August 1994, Mr. Apodaca had exploratory surgery for abdominal wall pain at UNM hospital to remove lesions on the inside of his abdominal wall. A subsequent "stabbing" left groin pain was found not to be surgically connected. Tr. at 125. He returned a few days later complaining of foot pain, which was diagnosed as bilateral metatarsalgia. Plaintiff was treated

conservatively with 3D boots and shoe inserts and a higher dosage of Motrin.  Tr. at 120, 123. Plaintiff was not wearing the special shoe (3D boot) at the hearing, nor had he worn it for several weeks prior to the hearing.  Tr. at 214- 15.

10.  In late February 1995, plaintiff returned to UNM hospital as an outpatient complaining of bilateral shoulder pain which he stated had lasted for the last seven or eight years, and buttock pain which had continued for the last ten years.  Tr. at 120.  When he was finally evaluated for these symptoms in April 1995, it was noted that the pain he complained of could not be reproduced upon examination.  The diagnosis was morbid obesity with chronic pain of unknown etiology.  Tr. at 117.  The importance of weight reduction was stressed and the outpatient note states that he had already been referred for this treatment.  Id.

11.  Plaintiff lives with his wife and three sons.  He does some of the housework, e.g., sweeping and dishwashing.  Tr. at 203-04.  He can still drive but has no hobbies.  Tr. at 204.  Mr. Apodaca stated that he hurts "all the time," but can walk about two blocks with minimal difficulty and can sit for a couple of hours before he has to stand because of the pain.  Tr. at 199, 200.  He is able to stand about ten or fifteen minutes until he needs to sit.  Tr. at 203.  He said that he can lift about 30 pounds, but could walk only a few feet while bearing that weight.  Tr. at 213.

12.  Plaintiff spends his time sitting for six out of eight hours a day.  Mr. Apodaca told the ALJ that he needs to lie down about three times a day for 15 to 30 minutes each time because "he gets tired of sitting or standing."  Tr. at 205.  At the hearing, the plaintiff told the ALJ that he hurt the most in his lower left back and hip area.  Tr. at 199.  His feet and shin bones also hurt, particularly after walking a couple of blocks.  Tr. at 211.  On a scale of one to ten, he stated that the pain in his legs and left hip is constant, and generally stays at a level of seven.  Tr. at 201.

Plaintiff takes Ibuprofen 600 milligrams, 3 times a day for the pain, but it does not always alleviate the pain.  Tr. at 201-02.

    13.   Plaintiff was prescribed a C-PAP machine for possible sleep apnea, but he does not use it because he is allergic to the plastic material of which it is made.  Tr. at 117, 211-12.  He used an exercise bike about 30 minutes a day but stopped doing this two weeks before the hearing because of the pain in his lower back and hips.  Tr. at 216.

    14.   Mr. Apodaca said his energy level was low, Tr. at 214, and told the vocational expert (VE) that his poor sleeping habits caused him to fall asleep during the day.  Tr. at 219.  He also experienced drowsiness when driving at times, although his pain prevented him from driving long distances.  Tr. at 220.  Mr. Apodaca started businesses classes full-time at TVI but dropped out before his surgery.  He told the ALJ he never re-enrolled because he never felt good enough after the operation to re-enroll.  Tr. at 208.

**First Alleged Error**

    15.   Plaintiff claims that the ALJ did not consider whether Mr. Apodaca's obesity and other impairments equal any of the Listing of Impairments and also that he did not consider the combination of impairments at the Listings level.  On the contrary, the ALJ devoted almost an entire page to a step three analysis, examining those impairments he considered to have met the step two threshold of "serious" impairments: morbid obesity, bilateral metatarsalgia, bilateral tibial tendonitis and abdominal wall muscle pain.[2]  He then conducted a meticulous comparison of the

---

[2] The ALJ's examination of the record was thorough to the extent that he addressed even those impairments which were not alleged as the basis for plaintiff's disability, but which had been mentioned in the record.  See Tr. at 17, 117.

diagnosed conditions, which were not listed impairments themselves, to actual listings which most closely resembled them.  Tr. at 17.

16.  Plaintiff argues that the ALJ did not analyze whether his obesity meets or equals a listed impairment, particularly because at about 350 pounds, plaintiff admittedly meets the weight requirement of obesity as a listed impairment.  20 C.F.R. Subpt.P, App., § 9.09.  Plaintiff further contends that the ALJ's conclusion that Mr. Apodaca does not have arthritis was legally improper because the ALJ cannot interpret findings.[3]  This contention has merit sufficient to warrant remanding the case for further findings.

17.  The record contains two pieces of information relevant to a possible diagnosis of arthritis.  An April 1994 x-ray of plaintiff's pelvis and hip completed to rule out arthritis noted a normal left hip and pelvis.  Tr. at 103.  However, an x-ray of plaintiff's feet showed "minimal degenerative changes. . . ."  Tr. at 122.[4]  The ALJ stated in his decision that "[t]he minimal degenerative changes and bone spurs found in the feet in February 1995 do not constitute arthritis."  Tr. at 17.

18.  Degenerative changes may in fact be indicative of some evidence of arthritis.  See Ingram v. Chater, 107 F.3d 598, 604 (8th Cir. 1997) (remanded to determine whether x-ray

---

[3] Plaintiff would meet the requirements of the listed impairment of obesity if, in addition to his obesity, there was medical evidence of arthritis on a weight-bearing joint, hypertension, congestive heart failure, chronic venous insufficiency or respiratory disease.  20 C.F.R. Pt.404, Subpt.P, App.1, § 9.09.

[4] The record also contains a report from the chiropractor plaintiff was seeing following his car accident.  The chiropractor expected plaintiff to eventually suffer some "arthritic degeneration in his spine."  Tr. at 128.  The ALJ correctly did not attach much weight to the report of a chiropractor.  See 20 C.F.R. §§404.1513 & 416.913.  Moreover, the "degenerative changes" are in plaintiff's feet, not his spine.

demonstrated any amount of evidence of arthritis, where x-ray report degenerative changes); see also Cowley v. Heckler, 592 F.Supp. 1118, 1120 (N.D.Ill. 1984) (mild degenerative changes in lumbar spine reflected partial confirmation of other doctor's findings, which included arthritis); Hughes v. Chater, 895 F.Supp. 985, 990 (N.D.Ill). I agree with plaintiff that the ALJ impermissibly interpreted the medical findings. See Rosado v. Sec'y of Health & Hum. Serv., 807 F.2d 292, 293-94 (1st Cir. 1986) (Commissioner not qualified to analyze bare medical findings in coming to conclusions regarding a claimant's ability to work).

19. Because the existence of arthritis in a weight-bearing joint is critical to a determination of whether plaintiff would be considered disabled at a step three level, the ALJ should make inquiry into this issue upon remand.

20. Plaintiff's contention that the ALJ did not examine plaintiff's obesity as a nonexertional impairment is without merit. The hypotheticals posed for the VE's consideration included all of the limitations which plaintiff himself recited to Dr. Deming, which in turn included all of those limitations brought on by his obesity. Tr. at 225-27.[5] Further, the VE was present during the hearing and was aware of the claimant's physical appearance and his disability claims. Diaz v. Secretary of Health & Human Services, 898 F.2d 774, 777 (10th Cir.1990) (the VE's presence during the hearing rendered minimal any error in the hypothetical questions posed).

**Second Alleged Error**

---

[5] Whether or not obesity is considered a nonexertional impairment in itself is not a critical question when the limitations imposed by obesity are significant and if they are considered. Cmp. Evans v. Chater, 84 F.3d 1054, 1056 (8th Cir. 1996) (obesity included in list of nonexertional impairments); Lucy v. Chater, 113 F.3d 905 (finding that ALJ erred in concluding that claimant could engage in full range of sedentary work where nonexertional impairments of obesity and borderline intellectual functioning were significant).

21.  Plaintiff contends that the ALJ erred in failing to consider plaintiff's testimony that he needs to lie down during the day, and the effect of his drowsiness on his ability to work. The ALJ noted that if fully credible, then his ability to work would indeed be significantly compromised. Tr. at 19. Plaintiff reported two specific instances when he fell asleep during an activity during the day. On one occasion, he was up at night studying. Tr. at 232. On the other, he was watching the movie, "Dumb and Dumber" with his wife, and fell asleep twice. Tr. at 231. Plaintiff's wife testified that for months, Mr. Apodaca has been falling asleep in front of the TV everyday around 3:00 in the afternoon.[6]

22.  One of the hypotheticals posed to the VE at the hearing was one which included the need to lie down three times a day, for 15 or 20 minutes at a time. Tr. at 229. The VE had identified the jobs of alarm monitor, parking lot attendant and dispatcher as jobs which were available in the economy and which plaintiff would be able to perform, even with all the limitations he had reported to Dr. Deming. Tr. at 226-28. However, with regard to plaintiff's need to nap several times a day, the VE opined that this limitation would not be accommodated in the occupations of alarm monitor or parking lot attendant, but would be possible as an office helper although the job pool would be narrowed down to about 800,000 jobs in the national sector. Tr. at 229-30. The VE conceded that if plaintiff did in fact need to nap several times a day, this additional limitation would make plaintiff virtually unemployable. Tr. at 235.

23.  The ALJ discounted plaintiff's need to nap as noncredible, and therefore not a significant limitation on his ability to work. Tr. at 19. In arriving at this determination, the ALJ also considered the factors relevant to a credibility analysis, including plaintiff's daily activities, his

---

[6] Mrs. Apodaca arrives home from her job as a teacher's assistant everyday around 2:30.

functional restrictions, treatment for pain. Luna v. Bowen, 834 F.2d 161, 165 (10th Cir. 1987) (ALJ may consider daily activities, and the dosage, effectiveness and side effects of medication). In his detailed findings, the ALJ also noted the inconsistencies between the medical findings and plaintiff's subjective complaints. Tr. at 20.  See  20 C.F.R. §§ 404.1529, 416.929; Luna v. Bowen, 834 F.2d 161, 165 (10th Cir. 1987); Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993) .

24. Contrary to plaintiff's assertion, the ALJ did consider plaintiff's testimony that he needs to lie down during the day. However, upon conducting a credibility analysis, and using the proper legal framework, the ALJ determined that Mr. Apodaca's testimony was not credible. He therefore concluded that his need for several short naps a day did not affect his findings regarding his ability to work. In this case, the ALJ's determination articulated specific reasons for questioning Mr. Apodaca's credibility and was based on substantial evidence. Diaz v. Sec'y of Health & Hum Servs., 898 F.2d 774, 777, cited in Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (court will not upset credibility determination when supported by substantial evidence).

**Third Alleged Error**

25. Plaintiff claims that the ALJ improperly relied on the absence of a doctor's opinion that Mr. Apodaca is disabled. Plaintiff's argument here attempts to turn what should be plaintiff's burden on its head. The ALJ can fairly rely on the fact that no doctor opined plaintiff was disabled when plaintiff does not put forth sufficient evidence of a disabling impairment. See Muskgrave v. Sullivan, 966 F.2d 1371, 1376 (10th Cir. 1992) (plaintiff bears the burden of establishing disability at steps three and four of the sequential analysis); cmp. Kelley v. Chater, 62 F.3d 335, 338 (10th Cir. 1995) (ALJ's conclusion that plaintiff was not disabled upheld where

9

"[n]o physician has opined that [plaintiff] is disabled, and, in fact, three physicians have opined that he retains the ability to perform at least some sedentary work").

**Fourth Alleged Error**

26. Last, plaintiff alleges that the ALJ erred in relying on the vocational expert's opinion, without testimony regarding the number of jobs available in the regional economy. The VE named four occupations for which a substantial number of jobs existed in the national economy: alarm monitor, office helper, parking lot attendant and dispatcher. Tr. at 226-27. The VE pointed to the local economy with respect to only the alarm monitor (approximately 80 locally and 75,000 nationally). Tr. at 227. With the other jobs, the numbers she cited were based on the national economy: for office helper, two and a half million; parking lot attendant, 83,000 and dispatcher, 200,000).

27. Exclusion of the regional economy does not constitute error requiring remand, because it does not matter if work exists in the immediate area in which plaintiff lives. 20 C.F.R. § 404.1566(a)(1). Rather, work "exists in the national economy when there is a significant number of jobs having requirements which [the claimant is] able to meet. . . ." 20 C.F.R. S 404.1566(b). The Commissioner's burden extends only to showing that there are specific jobs in the national economy which the claimant is capable of performing. Lopez v. Sec. HEW, 512 F.2d 1155 (1st Cir.1975). In this case, the testimony of the VE elicited by the ALJ met this burden.

28. In sum, the ALJ did err by failing to adequately consider whether Mr. Apodaca has a collateral impairment of arthritis which would satisfy the requirements for the listed impairment of obesity. However, the ALJ did not err in considering plaintiff's testimony that he needs to lie

down during the day, and the effect of his drowsiness on his ability to work; in relying on the absence of a doctor's opinion that Mr. Apodaca is disabled; or in relying on the vocational expert's opinion which omitted testimony regarding the number of jobs available in the regional economy.

## Recommendation

I recommend that plaintiff's Motion to Reverse and Remand for a Rehearing [9-1] be granted and that this cause be remanded in order for the Commissioner to make further inquiry into whether the findings with respect to the radiology consult report dated February 18, 1995, demonstrate some evidence of arthritis consistent with a step three analysis. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

                                              UNITED STATES MAGISTRATE JUDGE